CONTINENTAL ASSURANCE CO. *v.* SICKELS.

[No. 1268A207. Filed November 19, 1969. Rehearing denied December 17, 1969. Transfer denied March 17, 1970.]

672

*White, Raub, Reis & Wick,* of Indianapolis, for appellant.

*Steers, Klee, Jay & Sullivan,* of Indianapolis, for appellees.

PFAFF, C.J.—Plaintiffs-appellees filed suit against defendant-appellant to recover benefits allegedly due under a contract of insurance. Upon appellant's failure to appear and defend this cause of action, a default judgment was entered against the defendant-appellant. Upon learning of the entry of the default judgment in plaintiff-appellees' favor, appellant filed a complaint to set aside said default judgment, alleging therein excusable neglect in addition to a proper defense to the cause of action, i.e., termination of the appellant's obligation to pay under the contract provisions prior to the date of injury. Appellees demurred to the appellant's amended complaint to set aside said default judgment and said demurrer was sustained for the reason that the trial court concluded that the appellant's complaint did not state facts sufficient to constitute a cause of action to set aside the default judgment.

The correctness of the court's ruling on appellees' demurrer is the issue on appeal. It is our opinion that the judgment of the Municipal Court of Marion County, Room No. 2, in sustaining appellees' demurrer constitutes reversible error.

The setting aside of a default judgment is provided for by

Acts 1881 (Spec. Sess.), ch. 38, § 135, p. 240, as last amended by Acts 1941, ch. 72, § 1, p. 185, being Burns' Ind. Stat. Anno. § 2-1068 (1967 Repl.).[1]

Section 2-1068, *supra*, states in pertinent part as follows:

"The court shall relieve a party from a judgment taken against him through his mistake, inadvertence, surprise, or excusable neglect, on complaint filed and notice issued, as in original actions within two (2) years from and after the date of the judgment, * * *."

Appellees' demurrer and memorandum in support thereof maintains that appellant's amended complaint to set aside default judgment did not state facts sufficient to constitute a cause of action to set aside the default judgment because appellant did not establish "excusable neglect". The applicable statute, § 2-1068, *supra*, speaks of four separate grounds available when a party seeks to set aside a default judgment: mistake, inadvertence, surprise, or excusable neglect. We believe, and appellant so maintains, that a technical interpretation of the statute would compel a conclusion that appellees have conceded that appellant's amended complaint to set aside said default judgment is sufficient to constitute a cause of action to set aside the default judgment because of alleged facts sufficient to show "mistake, inadvertence, or surprise", that is, the demurrer speaks of only "excusable neglect". Further, the demurrer does not question the sufficiency of the defense raised by appellant in its complaint. Here, however, we need not resort to a conclusion supported by a technical construction of the appropriate statute, nor is it necessary to speak of appellees' waiver of issues that might have been interposed by their demurrer. We prefer to consider the essential question of whether or not appellant provided the trial court with facts sufficient to show "excusable neglect", this being the exact basis of appellees' demurrer.

[1] This section was repealed by Acts 1969, ch. 191, § 3, to be effective January 1, 1970, but is reinstated in part by Indiana Rules of Procedure, Rule TR. 60(B)(1).

We have heretofore stated that it was error to sustain the demurrer, the reason being that appellant's excusable neglect was reason to set aside the prior default judgment. Defendant-appellant did not appear and defend the original action filed against it because of the following facts which we here hold to be facts establishing appellant's excusable neglect.

The record establishes that appellant, Continental Assurance Company, received a copy of appellees' complaint and a summons on November 17, 1967. Appellant has an established procedure whereby complaints and summonses, when received at the appellant's Chicago office, are "docketed" and sent to appellant's counsel. Appellant's "docketing" of legal proceedings against appellant refers to an intra-office procedure whereby upon receipt of a complaint and summons the secretary of appellant's counsel records the same in a ledger which gives the date of receipt and the date upon which an appropriate response is due. When appellant received the complaint and summons in question, the aforesaid intra-office procedure was not effected and appellant's counsel first received notice of appellees' claim when notice of default judgment was received on December 5, 1967. At this time appellant company, after a thorough search of all records, discovered the original complaint and summons in a complaint file drawer and said documents were attached, by paper clip, to legal proceedings emanating from another jurisdiction. Appellant averred that in filing, a clerk allowed appellees' complaint and summons to become attached to a legal matter from another jurisdiction. Thus, appellant's counsel was not notified of the pending claim and a default judgment resulted from what we hold to be appellant's "excusable neglect". Thereafter, appellant immediately instituted this action to set aside the default judgment.

In reviewing Indiana decisions and authorities defining the statutory language "excusable neglect" we find the following statement in 2 Wiltrout Ind. Civ. Proc. § 1230, p. 243:

"(4) What Constitutes Excusable Neglect, etc. No fixed rule can be stated as to what facts and circumstances will constitute excusable neglect, mistake, or inadvertance for not appearing and defending against the default judgment. What constitutes excusable neglect, mistake, or inadvertence within the meaning of the statute must be determined from the facts in each particular case, and any doubt should be resolved in favor of the application to set aside the default judgment in order to permit the merits of the case to be heard and determined. The term 'excusable neglect' or 'inadvertence' is a general term, and each case must necessarily depend upon its own facts and circumstances, and any doubt resolved in favor of the applicant in order that the merits of the cause may be heard and determined. There are innumerable decisions construing what is sufficient to constitute 'excusable neglect' and it is impossible to review all of them in this work. All that can be done is to refer to a few of the many decisions.

"The following facts have been held to constitute excusable neglect, mistake, and inadvertance: (a) absence of party's attorney through no fault of party; (b) an agreement made with opposite party, or his attorney; (c) conduct of other persons causing party to be misled or deceived; (d) unavoidable delay in traveling; (e) faulty process, whereby party fails to receive actual notice; (f) fraud, whereby party is prevented from appearing and making a defense; (g) ignorance of defendant; (h) insanity or infancy; (i) married women deceived or misled by conduct of husbands; (j) sickness of party, or illness of member of family."

We refer to the opinion of this court in the case of *Himelstein Bros., Inc.* v. *The Texas Co.* (1955), 125 Ind. App. 448, 125 N. E. 2d 820. This decision and an earlier Appellate Court decision in *Masten* v. *Indiana Car, etc., Co.* (1900), 25 Ind. App. 175, 57 N. E. 148, provide ample authority for our judgment that it was reversible error to sustain appellees' demurrer.

In *Himelstein, supra,* this court stated at page 453 of 125 Ind. App. as follows:

"This court is asked to excuse counsel's neglect in entering his appearance for two reasons—first, he contends that he asked the deputy clerk to enter his appearance for him,

which was not done; second, he alleges and so testified that the summons and a copy of the complaint were misplaced on his desk by his secretary when she was straightening out the papers. The evidence shows that the counsel went to the court house, after being contacted by the secretary of appellant corporation, where he procured a copy of the complaint; that he told the deputy clerk he wished to enter his appearance for appellant; that the deputy clerk was unable to find the docket sheet for this case at that time, which was between 3:00 and 4:00 in the afternoon, and that counsel informed the deputy clerk to enter his appearance when she found the docket sheet. No evidence was presented that counsel ever checked the record further to determine whether or not his appearance had been entered. Evidence disclosed that counsel knew nothing about the judgment until several weeks thereafter when he was informed of its rendition by the secretary of appellant corporation who had been advised by Dun & Bradstreet that the judgment had been rendered. The counsel testified that his secretary re-arranged various papers in straightening up his desk which was during tax-paying time, which the counsel said accounted for the reason that he failed to notice and pay any more attention to the summons. The attorney was unable to identify positively the deputy clerk with whom he allegedly talked and instructed to enter his appearance. The attorney's testimony was contradicted by the deputy clerk who ordinarily sits at the desk to the right as one enters the Clerk's Room which was the desk where the girl sat to whom counsel testified he requested to enter his appearance. The deputy clerk recalled no conversation as related by counsel and testified, 'We have never had a lost blank sheet.'

"Another deputy clerk testified that she recalled no request to enter counsel's appearance in the case.

"The burden of proof rested upon the appellant in this case. After hearing all of the evidence and observing the witnesses, the trial court found against the appellant. To disturb the decision of the lower court, we would have to weigh the evidence. This, we cannot do. Under the facts presented, we cannot substitute our opinion for that of the trier of the facts. To do so, this court would have to say there is no evidence in the record to sustain the finding of the trial court. The general rule is that a decision of the trial court will not be interfered with when it is supported by any evidence."

Further, at page 455 of 125 Ind. App. the *Masten* case, *supra,* was distinguished.

"Appellant relies upon the case of Masten v. Indiana Car, etc., Co. (1900), 25 Ind. App. 175, 57 N. E. 148, which was an appeal from setting aside a default judgment. There the attorney who failed to enter his appearance was Attorney General of Indiana who also maintained a private law office. In his affidavit to substantiate his theory of excusable neglect, he set out the particular duties which he was at that time engaged in which called him away from his office for three days following May 8; that at his private law office he kept assistants to whom it was his custom to refer matters of entering appearances and filing pleadings in his private practice and to whom he left the duty of attending to all matters connected with pending cases. It was further stated that he received a letter enclosing a copy of the summons and that he intended to send them to his private office to ask his assistants to attend to the matter as was his custom; that he did not send the letter and summons but left them on his desk where, either by carelessness of the janitor or of someone unknown to him, they became covered up and escaped his attention thereafter. The affidavit further recited that, 'affiant supposed he had sent the papers to his assistants and acted upon that belief.'

"*We believe the facts of the two cases are distinguishable. In the instant case there was no testimony that appellant's counsel had any assistants to whom it was his custom to refer such matters as entering apperances, or that he failed to call it to someone else's attention in his office; neither is there any evidence where affiant's counsel testified that he supposed he had entered the apperance and acted upon that belief. Neither is there evidence that the attorney was out of his office for any period of time as in the Masten case, supra. In the Masten case, supra, the affidavit recited that the mistake was the result of someone unknown to the affiant; that it could have been either the janitor, secretary or some other party, while in this case, there is no lack of identity as to whom appellant seeks to place the blame. There is evidence that appellant's counsel did not get back to the Clerk's Office and did not check the record as to whether his appearance was entered or not. * * *.*" (Emphasis supplied)

The record in the instant case comes within the ambit of excusable neglect as enunciated in the *Masten* case, *supra.*

Here, as in *Masten,* the mistake, improper filing, was the result of an individual error by someone unknown to appellant's counsel. Appellant should be allowed to defend against appellees' claim.

Judgment reversed with instructions to overrule appellees' demurrer to appellant's complaint to set aside default judgment. The costs of this appeal shall be assessed against appellees.

Hoffman and White, JJ., concur.

Sharp, J., concurs with opinion.

## CONCURRING OPINION.

SHARP, J.—I concur in the result reached by the majority opinion but do not agree with all of the reasoning and the authorities supporting the majority's conclusion.

I believe that the Appellant's Complaint was sufficiently broad within the meaning of Burns' Indiana Statutes Annotated, § 2-1068, to withstand a demurrer. I further believe that the Appellant is entitled to a hearing on the merits of its unverified complaint to set aside the default judgment. The proceedings with reference to the hearing on the merits should be governed by the principles set forth in *Schepp* v. *Pogue,* 142 Ind. App. 341, 234 N. E. 2d 874 (1968). When proof is tendered within the rules of the Schepp case it still may be possible for the trial court to find under all of the circumstances before it that the conduct of the Appellant's employees was not in fact excusable neglect. Inasmuch as we are overruling the demurrer sustained against Appellant, its remaining burden is to prove the allegations of its complaint by a fair preponderance of the evidence.

I do not believe that this case involves the negligence of a party's legal counsel in failing to make a timely appearance for the party. I believe that this is a case involving the acts of the defendant itself in misplacing the relevant papers. This distinction is necessary to divorce the instant situation from

that where the policy of the law would be to not hold a party liable to a default for the acts of another person over which it had no control and could reasonably rely upon.

What I believe is before this court is actually a policy question of first impression surrounding the definition of the term "excusable neglect" as it applies to defendants themselves. It is well settled that the statute in question should be interpreted liberally to allow parties to defend the original claim for damages on the merits rather than have a default judgment be enforced. *Beatty* v. *McClellan*, 119 Ind. App. 385, 88 N. E. 2d 56 (1949) ; *Falmouth State Bank* v. *Hayes*, 97 Ind. App. 68, 185 N. E. 662 (1932) ; *Ayrshire Coal Co.* v. *Thurman*, 73 Ind. App. 578, 127 N. E. 810 (1920). However, there is another side to the coin, as aptly stated in *Himelstein Bros., Inc.* v. *The Texas Co.*, 125 Ind. App. 448, 457, 125 N. E. 2d 820, 823 (1955), quoted in the majority opinion. There this court stated:

> "Appellant urges upon this court to reverse the judgment of the trial court in order to permit them to try the case upon the merits. What might be equitable in this case might prove inequitable to other litigants in the future. If Appellant's theory be adopted, then similar arrangements made with a Clerk's Office or the misplacing of papers on one's desk would become a precedent and courts would be placed under the imperative duty of giving relief, thus preventing parties from knowing whether they had a valid judgment until after a lapse of time."

It is this policy question that is before us, and I believe that the facts alleged in the complaint do constitute a cause of action under the statute. However, this is not a free rein in the area, and I believe it may be excusable neglect only because there are several indices of mistake involved; the present complaint was filed as soon as default notice was sent and the error discovered, and the wayward paperclip is not an unusal problem. This seems to me to override Appellee's claim that we will never be sure when a judgment is final, for if the complaint of a defendant shows excusable neglect in another con-

text, the default judgment will be set aside. In other words, no default judgment is truly valid until the defaulted party has had a reasonable time to come forward to show his mistake, inadvertance, surprise, or excusable neglect. The cases are consistent in holding that a defaulted party must come forward within a reasonable time, i.e., as soon as they diligently discover their mistake, and they may not attempt to have a default set aside after waiting for the statutory period of limitation to nearly run. *Birch et al.* v. *Frantz et al.*, 77 Ind. 199, 203 (1881) ; *Moore* v. *Horner*, 146 Ind. 287, 292, 45 N. E. 341 (1896) ; *Ammerman* v. *State*, 98 Ind. 165 (1884) ; *City of Indianapolis* v. *State ex rel. Kennedy*, 224 Ind. 600, 607, 70 N. E. 2d 635 (1946) ; *Irwin* v. *State*, 220 Ind. 228, 245, 41 N. E. 2d 809 (1942). Also, in the present case, I do not feel there would be a hardship upon the Appellee to try his original complaint on the merits.

However, it must be emphasized here that this case should not be construed to always relieve an insurance corporation of the acts of its authorized employees and agents in mislaying or mishandling suit papers. Insurance corporations are in the business of handling claims and must necessarily handle suit papers and other legal process in the ordinary course of their business. They certainly should not be encouraged by the result in this case to lower their standards of care and caution in the handling of such papers. The burden must always be on such corporate party to show that the facts of each particular case constitute excusable neglect.

As the trial court must now determine whether under all of the circumstances of this case the conduct of the Appellant's agents and employees, in fact, constitutes excusable neglect, the reasonableness of Appellant's intra-office procedure for handling such papers is put in issue. It is for the trier of fact to decide whether the mistake could have been prevented by another intra-office procedure, or, to use another example, whether the facts surrounding the wayward paperclip were negligence on the part of the secretary or not, or whether it

was defendant's negligence in hiring this employee. The trial court could find such acts were not excusable neglect, but mere carelessness.

For the above stated reasons, I concur that the demurrer to Appellant's complaint should be overruled.

NOTE.—Reported in 252 N. E. 2d 439.